## SILVER v. LIEBERMAN.

### In re SOLOW & GLASS, Inc.

### No. 5552.

District Court, E. D. New York.

March 3, 1932.

Leo J. Linder, of New York City, for plaintiff.

H. S. & C. G. Bachrach, of Brooklyn, N. Y., for defendant.

BYERS, District Judge.

This is an action in equity brought by the trustee in bankruptcy of an involuntary bankrupt, to set aside as preferential, a payment of $1,845 made to the defendant, on January 3, 1929.

The petition was filed on January 23rd, 1929. The bankrupt corporation was engaged in sundry building operations during the period immediately preceding the bankruptcy, and was the owner of five parcels of property, upon three of which it had completed and rented buildings; the fourth was the parcel involved in this action, and the fifth consisted of eleven unimproved lots at Glendale, Long Island.

The property here in question was situated at New Lots avenue and Elton street, and there the bankrupt company had started, and carried forward the construction of a four-story building, containing seven stores and forty-five apartments. The building was started in the fall of 1928, and the bankrupt

had borrowed $3,600 on September 12th from the defendant; that is, six notes of $600 each, unsecured, were executed and delivered at that time, payable one a month, the last falling due on March 12, 1929. The bankrupt received in cash $2,012 so that the loan cost $1,588.

The testimony of both the president of the bankrupt, called by the plaintiff, and the defendant was to the effect that the entire loan was to be repaid so soon as the first advance of 45% was received on account of the building loan.

Naturally the trustee was without original information on the subject, and had to offer such evidence as was available to him.

That building loan advance was made on January 3rd, 1929, and as the first three $600 notes had been previously paid, the defendant asked that the last three, although not due, be likewise paid out of the proceeds of the said advance. This the bankrupt acceded to, and paid the face of the notes, plus $45 interest.

These notes were due respectively January, February, and March 12th, 1929, and why they should have been paid with interest in full to the due date, if in fact they were intended to be payable on the date of the first building loan advance, has not been explained. Nor has the payment of the first three notes prior to the receipt of the first building loan advance been coordinated to the theory that all of the notes were to be paid out of that advance.

The actions of the parties were not consistent with the story told by Solow, the president of the bankrupt, and by the defendant's witnesses, and as actions continue to speak louder than words, it cannot be deemed to have been shown that these payments were other than exactions levied in the hour of stress.

The question of the insolvency of the bankrupt on the date of these payments is not free from doubt, due to the nature of the assets of the bankrupt. The particular item of this building under construction is the elusive element—clearly it had a potential value, dependent upon its prompt completion, like that of any other thing in the course of production; the ability to assign precise figures at any instant of time, which would truly reflect the then value, is necessarily uncertain. The asset figures submitted for the trustee, however, are the only ones before the court, and no effort was made to discredit them by a showing that the appraiser was not qualified or correctly informed.

The total of the assets so shown is $341,750, to which must be added $16,000 in cash in bank, at the close of January 3rd, 1929.

The liabilities according to the schedules filed by the bankrupt, and verified by Barnett Glass of Solow & Glass, Inc., and one of the stockholders as well as an officer (now employed by one of the defendant's corporations), amounted to $407,204. The margin of deficit of assets under liabilities was substantial, and as no new debts were incurred between January 3rd, 1929, and twenty days later when the petition was filed, it is deemed that insolvency on the former date has been shown.

The three unsecured notes were paid in full, which is more than can be said for other debts owing by the bankrupt on January 3, 1929, except as to $16,000 or thereabouts. That sum substantially was paid to sundry creditors between the latter date and January 20th, 1929, including the Midwood Trust Company, which received $5,000, in anticipation of a note for that amount not due. The rest of the unsecured creditors therefore obtained very much less than the percentage received by this defendant, as to these notes.

The remaining question is whether the defendant had reasonable cause to believe that the transfer would effect a preference, i. e., whether the circumstances as known to him on January 3, 1929, would prompt inquiry by the ordinarily intelligent and prudent business man. The following circumstances are thought to have put the defendant upon such inquiry:

A. The intimate and long continued association of the defendant with the activities and affairs of the bankrupt company, as shown by his numerous loans, both secured and unsecured, as well as by the frequent exchange of checks; defendant's own testimony was that he had known both Solow and Glass for upwards of twelve years, and had financed them on numerous occasions. He held secured mortgages and a blanket mortgage on other properties of the bankrupt, which apprised him of the respective equities involved; necessarily he was in frequent contact with the two stockholders and officers who comprised the bankrupt corporation. In October of 1928, he loaned $10,000 (at least notes for that amount were given without security) in this particular operation —such was not the response to impulse, but to calculation.

B. The latter loan was made because to the defendant's knowledge the bank had "shut down" on the bankrupt.

C. The interest on the second mortgages above referred to, was in arrears on the date in question.

D. One of the defendant's sons was the lawyer for the bankrupt, and the other took care of its insurance matters. The defendant and his sons occupied the same business office. The lawyer son of the defendant closed the transaction for the bankrupt involving the advance on account of the building loan.

The insurance broker son received $1,500 of past due premiums, which had been allowed to run for a year or more, out of this advance on the same occasion that these particular notes were paid to the defendant.

E. Following the deposit of the proceeds of the building loan advance, in the bankrupt's bank, Solow went to the building itself, discovered that the steel contractor had filed a lien, and removed steel which had been delivered to the job; also that a rumor was prevalent that Solow & Glass had obtained their first advance and departed with it, leaving the various contractors in the lurch.

These things Solow reported to the defendant at the close of that day, in the latter's office and in the presence of the defendant's sons.

The disclosures so made to the defendant who was well-versed in the affairs of the bankrupt, were of such a nature that a man of very much less than ordinary prudence would have been put upon inquiry concerning the effect of the bankrupt's making the payments which he demanded, of these three notes bearing the subsequent due date which has been stated.

Whether such an inquiry would have suggested the likelihood of what happened promptly thereafter, namely, the filing of many liens and consequent stoppage of the work and failure of the company, is not thought to be the test required by the law. The defendant was called upon to seek in good faith to ascertain if the meeting of his demands for this $1,845 was reasonably to be expected to effect a preference over other unsecured creditors, because of the special knowledge which the testimony shows that he possessed concerning the affairs and difficulties of the bankrupt company.

It is considered therefore that the plaintiff has sustained his burden of proof, and is entitled to a decree as prayed for in his bill of complaint.

Settle decree on three days' notice. If the foregoing be deemed an insufficient compliance with Equity Rule 70½, findings and conclusions in accordance with the foregoing may be settled upon like notice.